KAVITA K. LALWANI

642 Dowling Boulevard

San Leandro, CA  94577

Phone Number: (510) 666-5114

E-mail Address:  kavi2qt@yahoo.com

Pro Se Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO / OAKLAND DIVISION

|  |  |
|---|---|
| KAVITA K. LALWANI, | ) Case Number: CV 15 1641 |
| Plaintiff, | ) **COMPLAINT** |
| vs. | ) DEMAND FOR JURY TRIAL |
| SYLVIA MATHEWS BURWELL, | ) YES ☒ |
| Secretary, Department of Health and | ) |
| Human Services, | ) |
| Defendant(s). | ) |

1.  **Parties in this Complaint**

(a) **Plaintiff:**

Name:  Kavita K. Lalwani

Address:  642 Dowling Boulevard, San Leandro, California  94577

Telephone number:  (510) 666-5114

////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

COMPLAINT                    1 of 9.                    CASE NO.: _____

(b) **Defendant:**

Name:  Stephanie Mathews Burwell

Address:  Federal Drug Administration, Washington, DC

Telephone number:  _____

2. **Jurisdiction:**  My case belongs in federal court under federal question jurisdiction because it is about federal law(s) or right(s).  The laws involved are the Americans With Disabilities Act of 2008, 42 U.S.C. §12101.

3. **Venue:**  Venue is appropriate in this Court because Plaintiff is suing a federal agency of the United States government and Plaintiff lives in this district.

4. **Intradistrict Assignment:**  This lawsuit should be assigned to the San Francisco / Oakland Division of this Court because Plaintiff lives in Alameda County.

5. **Statement of Facts and Claims:**  Plaintiff was hired by the Food and Drug Administration ("FDA") on November 7, 2007, as a trainee Consumer Safety Officer (GS-0696-06).  Plaintiff was trained to inspect manufacturing processes and facilities to ensure that same complied with federal guidelines.  Plaintiff was fully qualified for the position and met all of the requirements for employment; however, Plaintiff did not receive the federally mandated six-month performance evaluation, nor was she was ever provided with the required uniforms, safety gears and tools needed to conduct specialized inspections, even after repeated requests for them. When Plaintiff was diagnosed with cancer and requested accommodation, both verbally and in writing, Defendant refused to engage in an interactive process to accommodate treatment, but instead served Plaintiff with disciplinary memoranda and subsequently fired Plaintiff on June 5, 2008, citing performance and conduct issues.  Plaintiff received her right-to-sue letter from the EEOC on January 15, 2015. (See Exhibit "A").

COMPLAINT

2 of 9.

CASE NO.: _____

**6. Argument.**

(a) *Discrimination Under Americans With Disabilities Act of 2008, 42 U.S.C A. §12101 ("ADA").*

(i)   On April 8, 2008, Plaintiff had a mammogram that revealed a suspicious lump in one breast.  The doctor recommended that the lump be investigated further by having an ultrasound performed as soon as possible.  Plaintiff's doctor stressed the urgency of obtaining treatment immediately, so she set up an appointment for the ultrasound, the following week and informed her immediate supervisor Eric Anderson, Supervisory Consumer Safety Officer.  Despite having requested this accommodation—specifically, time off— Plaintiff could not keep the appointment because Mr. Anderson was unwilling to change the date on which Plaintiff was required to submit a report.  Plaintiff then rescheduled the ultrasound for April 27, 2008, and told Mr. Anderson verbally that Plaintiff again needed an accommodation—specifically, time off—to have the procedure performed.  Again, he did not agree to accommodate her on the date requested. Instead, he insisted Plaintiff complete the report with trainer Larkin Bucklew by April 29, 2008.  Because Plaintiff was still in her  probationary period and was deeply fearful she would be placing her job in jeopardy or disciplined for not complying with Mr. Anderson's directive, Plaintiff  felt she had no choice but to reschedule the ultrasound for a *third* time.  Although Plaintiff *was* given time off on April 30, 2008, for the ultrasound, she believes Mr. Anderson could have accommodated her on the earlier date, but unreasonably declined to do so, despite the fact that the work could still have been performed satisfactorily

COMPLAINT                    3 of 9.                    CASE NO.: _____

had the accommodation been provided as originally requested. Following the ultrasound, the doctor recommended that a biopsy of the lump be performed.

(ii)    With respect to having a biopsy done, Plaintiff's doctor stressed the urgency of obtaining treatment immediately, so Plaintiff scheduled an appointment on May 1, 2008. Plaintiff had told Mr. Anderson verbally that she needed an accommodation—specifically, time off—to have the biopsy performed on that day. He did not agree to accommodate her on the date requested. Instead, he told Plaintiff she had to attend mandatory group meeting and to do "imports" (i.e., on-site checks of foods, primarily seafood). Again, because Plaintiff was still in her probationary period and was deeply fearful she'd be placing her job in jeopardy or disciplined for not complying with Mr. Anderson's directives, Plaintiff felt she had no choice but to reschedule the biopsy, which was done on May 5, 2008. Although Plaintiff *was* given time off on May 5, 2008, Plaintiff believes Mr. Anderson could have accommodated her on the earlier date, but unreasonably declined to do so, despite the fact that the work could still have been performed satisfactorily had the accommodation been provided as originally requested.

(iii)    On May 12, 2008, Plaintiff was called by her doctor and informed that she had breast cancer. Upon receiving the cancer diagnosis, Plaintiff was in shock, completely overwhelmed and traumatized. Plaintiff verbally disclosed to Mr. Anderson the nature of the diagnosis and the follow-up appointments and/or procedures for which Plaintiff would require time off (e.g. Pre-operative and genetic counseling, surgery, chemotherapy and/or radiation). Plaintiff also informed Mr. Anderson that she would need a modified workload during

**COMPLAINT**                    4 of 9 '        CASE NO.: _____

some of the treatment period. As Plaintiff was scheduled to start a three-day training seminar in Anaheim, California, the very next day (May 13, 2008), Mr. Anderson said he would discuss these issues with Plaintiff upon returning from Anaheim. Plaintiff was not offered any accommodation—specifically, time off—on May 12, 2008, to schedule any of the necessary appointments or procedures and was, in fact, expected her to prepare for, and participate in, the Anaheim seminar. Plaintiff did *not* want to go to Anaheim and expressed this sentiment to Mr. Anderson, who was dismissive of her concerns and said that arrangements had already been made.

(iv)   Upon returning to work on May 16, 2008, following the seminar, Plaintiff again attempted to initiate a conversation to address the matters that she initially raised on May 12, 2008. Mr. Anderson said he was busy with conference calls, assured her he'd call her once he was done and closed his door; Plaintiff never heard back from him. Instead, he seemed completely unsympathetic and in fact quickly served her with unreasonable performance related memos. Later that day, he sent Plaintiff a memorandum (noted as "Direct Order"), mandating work that had to be completed by May 22, 2008 (one directive was that Plaintiff complete an inspection and file a report for Misionero Vegetables). Mr. Anderson was aware that, for reasons related to her cancer treatment, Plaintiff would not be at work on May 19, 2008, and would need time off on May 20, 2008, for a medical appointment as well.

(v)   Upon receiving Mr. Anderson's memo of May 16, 2008, Plaintiff responded to him via E-Mail the same day, setting forth an extensive list of assignments and tasks which Plaintiff had already completed and others which were

COMPLAINT                              5 of 9.                    CASE NO.: _____

mandated for completion by May 22, 2008, including inspections and imports. Plaintiff reminded him that she still had numerous pre-operative medical consultations, as well as the surgery itself, for which to prepare, all of which would affect her workload. Plaintiff also told him that she felt under incredible stress attempting to handle all of the work assignments and accommodate all of her medical issues as well.

(vi) Plaintiff had scheduled surgery to remove the cancer on May 26, 2008. Due to the urgency of obtaining treatment, Plaintiff told Mr. Anderson verbally that she needed time off to have the surgery done as soon as possible, but he did not agree to accommodate her on that date. Again, because Plaintiff was still in her probationary period and was deeply fearful she'd be placing her job in jeopardy or disciplined for not complying with Mr. Anderson's directives, Plaintiff felt she had no choice but to reschedule the surgery, which was ultimately performed on June 16, 2008. Plaintiff had already received Mr. Anderson's letter of termination dated June 5, 2008 Plaintiff believes Mr. Anderson could have accommodated her on May 26, 2008, but unreasonably declined to do so, despite the fact that the work could still have been performed satisfactorily had the accommodation been provided as originally requested.

(vii) Despite a difficult, daily struggle with the disease, Plaintiff wanted to lead as regular a life as possible, and continuing in her employment was an essential part of doing so. Despite the fact that, following her biopsy, Plaintiff was unable to drive, work-related requirements forced her to complete assignments that entailed driving, which Plaintiff compelled herself to do, although she

COMPLAINT     6 of 9     CASE NO.: _____

experienced pain and discomfort in and around the biopsy area. Plaintiff fully anticipated that Mr. Anderson, as well as any other supervisors and/or trainers with whom Plaintiff interacted, would be open to making the reasonable accommodations requested, including time off and workload adjustment, and would engage in an open, interactive process during her treatment so that Plaintiff could work satisfactorily and effectively during her recovery period.

(viii) Defendant's refusal to accommodate Plaintiff's medical appointments and/or procedures *on the dates requested*—which dates were deemed critical and imperative by her physicians due to the aggressive nature of Plaintiff's condition—had a significantly adverse effect, both on her state of mind and her sense of well-being. Although the tasks and assignments scheduled on the dates requested by Plaintiff could easily and satisfactorily have been performed at other times—and Plaintiff's absence on such dates would not have placed undue burden on, or caused hardship to, Defendant—Defendant insisted that Plaintiff work on those days. Additionally, Defendant's unwillingness to make any sort of accommodation to Plaintiff's workload, such as providing her with assistance when lifting fifty-pound boxes while conducting imports or making provision for driving assistance when she traveled to locations at which imports were conducted (both of which accommodations had been requested on May 12, 2008, the very day that Plaintiff disclosed her diagnosis to Mr. Anderson), contributed egregiously to her stress in the workplace. Plaintiff was extremely fearful of jeopardizing her employment, as she was still in the probationary period, and believed that she had no option but to reschedule several critical appointments and procedures.

COMPLAINT                                                    CASE NO.: _____

7 of 9

Following her diagnosis and throughout her period of treatment, Plaintiff believed that, with reasonable accommodation, she would have been able to perform the tasks and duties required in a timely manner. However, because Defendant viewed Plaintiff's requests for accommodation as disruptive and inconvenient, Plaintiff was therefore branded "unwilling to work collaboratively" and incapable of "handling the stress of multiple tasks," thereby making her performance on the job seem less than satisfactory.

(b) *Discrimination Under Title VII Due to National Origin.*

(i)     Plaintiff is a woman of Indian ethnic/racial origin.

(ii)    Her immediate supervisor Eric Anderson frequently made fun of her accent and the way she pronounced certain words. He often believed he had to correct words which, in his mind, she pronounced differently. In addition, Mr. Anderson told her that there had been another Indian with strongly accented English working at the FDA, but such individual was moved to Fresno because he could not be understood clearly. Other employees who were not of Indian descent were treated differently and were not subjected to comments about their mannerisms or pronunciation of English. On one occasion, Mr. Anderson was involved in an accident in which his car was bumped by an Indian driver. Mr. Anderson returned to the office and narrated the incident in an extremely offensive manner, mimicking the man's accent and gestures and imitating him in a condescending and derisive way. Plaintiff witnessed this incident. In addition, Mr. Anderson constantly made fun of the names for Indian spices and packaging and asked why they had such an offensive odor. He even want so far as to say that Indian products should be

**COMPLAINT**                    8 of 9.          CASE NO.: _____

quarantined in a separate room because they smelled so bad and asked aloud how could food have such smells.

(c) Plaintiff suffered an adverse employment action with respect to items 6(a) and 6(b) above and was terminated on June 5, 2008.

7. **Demand for Relief.** For the reasons set forth herein, Plaintiff is requesting relief in the form of back pay, punitive damages and reinstatement at the same grade level and with the same pay and benefits as were in effect at the time of her termination.

8. **Demand for Jury Trial.** Plaintiff demands a jury trial on all issues.

Respectfully submitted,

Date: _____, 2015

_____
(signature)

Printed Name:  KAVITA K. LALWANI

COMPLAINT                           CASE NO.: _____



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Kavita K. Lalwani,
Complainant,

v.

Sylvia Mathews Burwell,
Secretary,
Department of Health and Human Services
(Food and Drug Administration),
Agency.

Appeal No. 0120114159

Hearing No. 550-2009-0025X

Agency No. HHSFDAORAPA07008F

## DECISION

On September 2, 2011, Complainant filed an appeal from the Agency's August 2, 2011, final order concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. and Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. The Commission deems the appeal timely and accepts it pursuant to 29 C.F.R. § 1614.405(a). For the following reasons, the Commission AFFIRMS the Agency's final order.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Consumer Safety Officer at the Agency's San Jose, California facility. The record reveals Complainant was hired in 2007, and was serving her probationary period during the times of the events in this complaint.

From Nina Kelly 1.510.590.3925 Fri Apr 10 15:07:34 2015 MDT Page 11 of 15

2                                                      0120114159

On November 3, 2008, Complainant filed an EEO complaint alleging that the Agency discriminated against her on the bases of sex (female) and disability (breast cancer) when[1]:

1. On May 12, 2008, she requested a reasonable accommodation but management would not participate in the interactive process.
2. On May 16, 2008, her supervisor gave her two letters directing her to produce certain assignments by May 22, 2008, despite her request for time off.
3. On June 5, 2008, she was notified that she would be terminated during her probationary period, effective July 18, 2008.

At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of her right to request a hearing before an EEOC Administrative Judge (AJ). Complainant timely requested a hearing and the AJ held a hearing on February 1-2, 2010, and issued a decision on July 18, 2011.

In her decision, the AJ found that although Complainant had been diagnosed with breast cancer at the time of her termination, she was not substantially limited in any major life activity at that time. Rather, at that time, Complainant only experienced headaches, fatigue and some arm pain from her biopsy. Accordingly the AJ found Complainant failed to establish an inference of disability discrimination. Assuming, *arguendo*, that Complainant was an individual with a disability, the AJ found no evidence that any request for accommodation was denied by the Agency. The record revealed that Complainant's supervisor approved all leave requests. Furthermore, there was no evidence that Complainant made any request to be excused from training assignments, or asked for any extensions in assignment due dates.

The AJ noted that Complainant's supervisor testified to several instances where Complainant displayed a defensive attitude, an inability to follow directions and get along with co-workers, as well as an argumentative manner. These instances all occurred prior to Complainant learning she had been diagnosed with breast cancer on May 12, 2008, and most had been contemporaneously documented in early 2008 by her supervisor. Complainant was issued two assignments around the time of her diagnosis, but the AJ found that the subject matter was to complete work that had already been assigned and not completed. Although the timing of the termination closely followed the diagnosis, the AJ found this was not evidence of pretext because there were documented, legitimate non discriminatory reasons for her termination well before her diagnosis. The AJ was persuaded by the supervisor's testimony, as well as the testimony of another supervisor who supported the reason for the termination. Finally, although some women complained about the supervisor, the AJ found no evidence that the

---

[1] This case arose before January 1, 2009, the effective date of the Americans with Disabilities Act Amendments Act of 2008, which made a number of significant changes to the definition of disability under the Americans with Disabilities Act (ADA) and the Rehabilitation Act. Because this matter occurred in 2008, the Commission will use the analytical framework as it existed before the enactment of the ADA Amendments Act of 2008, to determine whether Complainant is an individual with a disability.

3 0120114159

termination was because of Complainant's sex. The Agency subsequently issued a final order adopting the AJ's finding that Complainant failed to prove that the Agency subjected her to discrimination as alleged.

## CONTENTIONS ON APPEAL

Neither party submitted contentions on appeal.

## ANALYSIS AND FINDINGS

Pursuant to 29 C.F.R. § 1614.405(a), all post-hearing factual findings by an AJ will be upheld if supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 477 (1951) (citation omitted). A finding regarding whether or not discriminatory intent existed is a factual finding. See Pullman-Standard Co. v. Swint, 456 U.S. 273, 293 (1982). An AJ's conclusions of law are subject to a de novo standard of review, whether or not a hearing was held.

An AJ's credibility determination based on the demeanor of a witness or on the tone of voice of a witness will be accepted unless documents or other objective evidence so contradicts the testimony or the testimony so lacks in credibility that a reasonable fact finder would not credit it. See EEOC Management Directive 110, Chapter 9, at § VI.B. (November 9, 1999).

After a careful review of the record, we find the AJ's decision to issue a decision finding no discrimination was based on substantial evidence in the record. The documentation in the record supports that Complainant had conduct issues prior to her diagnosis, which served as the basis for her termination. Moreover, we find no evidence that Complainant was denied an accommodation, as the record reveals all of her leave requests were in fact approved. Complainant failed to request an extension of time to complete the assignments in late May 2008. While Complainant's supervisor may not have been completely sympathetic, his actions did not violate the law. Complainant failed to prove, more likely than not, that the Agency's reasons for the termination were a pretext for discrimination.

## CONCLUSION

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we AFFIRM the Agency's final order.

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0610)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

From: Nina Kelly 1.5-10-590 3923 Pen Apr 10-15 07:34 2015 MDT Page 13 of 15

4                                                         0120114159

1.     The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.     The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

## RIGHT TO REQUEST COUNSEL (Z0610)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request from the Court that the Court appoint an attorney to represent you and that the Court also permit you to file the action without payment of fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney with the Court does not extend your time in which to file a civil action. Both the request and

From Nina Kelly 6145105590 3325 Fri Apr 10 15:07:34 2015 MDT Page 6 of 7

5                                                                     0120114159

the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations


___JAN 1 5 2015___
Date

6                                                01-2011-4159

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to the following recipients on the date below:

Kavita K. Lalwani
642 Dowling Blvd
San Leandro, CA  94577

David S. Handsher, Esq.
345 Franklin St
San Francisco, CA  94102

Cynthia Richardson-Crooks, Director
EEO Compliance and Operations Division
Department of Health and Human Services
200 Independence Ave., SW Room 306-E
Washington, DC  20201

___JAN 1 5 2015___
Date

Compliance and Control Division