UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| KAVITA K. LALWANI,<br><br>    Plaintiff,<br><br>    v.<br><br>SYLVIA MATHEWS BURWELL,<br>Secretary of the Department of Health and Human Services,<br><br>    Defendant. | Case No. 3:15-cv-01641-LB<br><br>**ORDER GRANTING THE SECRETARY'S MOTION TO DISMISS**<br><br>[Re: ECF No. 26] |

## INTRODUCTION

Kavita Lalwani, who is proceeding *pro se*, filed a complaint against Sylvia Burwell in her capacity as the Secretary of the United States Department of Health and Human Services. (First Amended Complaint ("FAC"), ECF No. 26.[1]) She alleges claims for disability discrimination in violation of Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, and race and national origin discrimination and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq*. The Secretary moves to dismiss Ms. Lalwani's race and national origin discrimination claim. Pursuant to Civil Local Rule 7-1(b), the

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of the documents.
ORDER (No. 3:15-cv-01641-LB)

1  court finds the Secretary's motion suitable for determination without oral argument and vacates
2  the October 29, 2015 hearing. For the reasons stated below, the court grants the Secretary's
3  motion and dismisses Ms. Lalwani's race and national origin discrimination claim with prejudice.

**STATEMENT**

**I. MS. LALWANI'S ALLEGATIONS**

Ms. Lalwani, who is "a female of Indian [o]rigin/race," was hired by the Food and Drug Administration ("FDA") as a trainee Consumer Safety Officer (GS-0696-06) on November 7, 2007. (FAC, ECF No. 24 ¶ 5; *see also id.* ¶ 5(b)(i).) She was trained to inspect manufacturing processes and facilities to ensure that those processes and facilities complied with federal guidelines. (*Id.* ¶ 5.)

On April 8, 2008, a mammogram revealed a lump in one of Ms. Lalwani's breasts. (*Id.* ¶ 5(a)(i).) Thereafter, she had to undergo several urgent medical tests to determine whether she had breast cancer. (*Id.* ¶ 5(a)(i)-(ii).) Although her immediate supervisor, Eric Anderson, ultimately did allow her time off to have these tests done, she could not have them done on the dates she preferred because he would not rearrange her work deadlines. (*See id.*) As a result, she had to schedule have the tests done later than she preferred. (*See id.*)

The tests revealed that Ms. Lalwani had breast cancer. (*Id.* ¶ 5(a)(iii).) On May 12, 2008, she told Mr. Anderson about the diagnosis and explained that she would need to have more time off in the coming months so she could attend further medical appointments and undergo urgent medical procedures. (*Id.*) In light of these appointments and procedures, she also requested a modified work load. (*Id.*) Ms. Lalwani alleges that Mr. Anderson refused to modify her work load, and while he did allow her time off to attend the medical appointments and undergo the medical procedures, she could not schedule her medical appointment and procedures as early as she needed to. (*See id.* ¶ 5(a)(iii)-(vi).) For example, she tried to schedule surgery to remove the cancer on May 26, 2008, but Mr. Anderson would not agree to accommodate her on that date. (*Id.* ¶ 5(a)(vi).) She had to reschedule the surgery for June 16, 2008. (*Id.*)

Ms. Lalwani alleges that Mr. Anderson could have accommodated her preferred dates, as the tasks and assignments could easily and satisfactorily been performed at other times and that her

ORDER (No. 3:15-cv-01641-LB)

2

absence on her preferred dates would not have been an undue burden on her employer. (*Id.* ¶ 5(a)(viii).)

Mr. Anderson terminated Ms. Lalwani's employment by letter dated June 5, 2008. (*Id.* ¶¶ (a)(vi), (c).) She alleges that she was branded as "unwilling to work collaboratively" and as incapable of "handling the stress of multiple tasks" because she had to take time off due to her urgent medical needs. (*Id.* ¶ 5(a)(viii).)

In addition to above, Ms. Lalwani also alleges that Mr. Anderson subjected her to discrimination due to her race and national origin. (*Id.* ¶ 5(b).) She alleges that Mr. Anderson was aware of race and national origin from her detailed job application. (*Id.* ¶ 5(b)(ii).) He allegedly asked her during her telephone interview with she, as a Hindu, would be confortable inspecting cattle carcasses, even though FDA does not inspect cattle. (*Id.*) Ms. Lalwani alleges that Mr. Anderson also frequently made fun of her accent and told her that another Indian employee with a strong accent was moved to Fresno because the employee could not be understood. (*Id.* ¶ 5(b)(iii).) She alleges that other employees who were not of Indian descent were treated differently and were not subjected to Mr. Anderson's comments. (*Id.*) One time, Mr. Anderson also allegedly told a story about his being in a car accident with an Indian driver. (*Id.*) He narrated the story in an offensive manner by mimicking the Indian driver's accent and mannerisms. (*Id.*) Mr. Anderson also constantly made fun of the way Indian foods and spices smelled and of their names. (*Id.*)

Finally, Ms. Lalwani alleges that Mr. Anderson subjected her to discrimination based on her gender. (*Id.* ¶¶ 5(b)(iv)-(vi), (c).) She alleges that she was treated differently than men in her office, in that Mr. Anderson failed to provide her appropriate work clothing when inspecting fish in sub-zero freezers. (*Id.* ¶ 5(b)(iv)-(vi).) Rather than being provided with insulated bottoms, hats, and gloves (which she requested) and clothes that fit her, she had to wear oversized coats that were appropriate for men weighing between 200 and 300 pounds. (*Id.* ¶ 5(b)(iv)-(v).) These oversized coats were dangerous for her to wear when walking on icy floors and climbing ladders and reaching out to inspect boxes. (*Id.*) Ms. Lalwani alleges that Mr. Anderson did not engage in an interactive process to provide her with an accommodation and has a documented history of dealing negatively with women. (*Id.* ¶ 5(c).)

ORDER (No. 3:15-cv-01641-LB)

3

1    Attached to Ms. Lalwani's First Amended Complaint is what she describes as a "right-to-sue
2    letter" by the United States Equal Employment Opportunity Commission ("EEOC") that is dated
3    January 15, 2015. (*Id.*, Ex. A, ECF No. 14-18.) The letter is a ruling on Ms. Lalwani's appeal from
4    an August 2, 2011 final decision concerning her equal employment opportunity complaint alleging
5    employment discrimination in violation of the Rehabilitation Act and Title VII. (*Id.*) The
6    allegations summarized in the letter relate to Ms. Lalwani's breast cancer diagnosis and her
7    attempts to take time off of work to go to medical appointments. (*See id.*) The EEOC ruling states
8    that Ms. Lalwani had alleged discrimination based on her sex (female) and disability (breast
9    cancer). (*Id.*) The EEOC affirmed the final order, which determined that Ms. Lalwani had failed to
10   prove that she had been subjected to discrimination. (*Id.*)

## II. PROCEDURAL HISTORY

12   Ms. Lalwani filed her complaint on June 22, 2015. (Complaint, ECF No. 1.) She alleged two
13   claims. (*Id.* ¶ 6.) In her first claim, she alleged that the Secretary violated Title I of the Americans
14   with Disabilities Act of 1990 ("ADA"), 12 U.S.C. § 12101 *et seq.*, as amended by the Americans
15   with Disability Act Amendments Act of 2008, P.L. 110-325, by not providing her with a
16   reasonable accommodation even though she was disabled due to her breast cancer. (*Id.* ¶ 6(a).) In
17   her second claim, she alleged that the Secretary violated Title VII by discriminating against her on
18   the basis of her race and national origin. (*Id.* ¶ 6(b).)

19   On June 22, 2015, the Secretary filed a motion to dismiss Ms. Lalwani's complaint for lack of
20   subject-matter jurisdiction and for failure to state a claim upon which relief can be granted.
21   (Motion to Dismiss Complaint, ECF No. 13.) More specifically, the Secretary argued that: (1) the
22   federal government is not an employer subject to liability under Title I of the ADA; (2) Section
23   501 of the Rehabilitation Act, 29 U.S.C. § 791, provides the exclusive remedy for federal
24   employees claiming discrimination based on disability; and (3) Ms. Lalwani did not allege that she
25   exhausted her claim for discrimination based on her race and her national origin. (*See generally
26   id.*) The court agreed and dismissed Ms. Lalwani's ADA claim with prejudice and her Title VII
27   claim without prejudice. (7/23/2015 Order, ECF No. 21.)

28   With the court's permission, Ms. Lalwani filed a First Amended Complaint on August 17,

ORDER (No. 3:15-cv-01641-LB)

4

2015. (FAC, ECF No. 24.) She brings the following three claims: (1) disability discrimination in violation of Section 501 of the Rehabilitation Act; (2) race and national origin discrimination in violation of Title VII; and (3) gender discrimination in violation of Title VII. (*Id.* ¶ 6.)

The Secretary moves to dismiss only Ms. Lalwani's race and national origin discrimination claim under Title VII for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. (Motion to Dismiss FAC, ECF No. 26 at 2.) Ms. Lalwani opposes the motion. (Opposition, ECF No. 29.)

## ANALYSIS

### I. LEGAL STANDARDS

#### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits defendants to move for dismissal of a complaint for lack of subject-matter jurisdiction. A plaintiff who seeks to invoke federal jurisdiction by filing a complaint in federal court bears the burden of establishing that jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990). The plaintiff must therefore plead sufficient facts in the complaint to establish the court's jurisdiction. Fed. R. Civ. P. 8(a)(1).

A defendant may mount either a facial or a factual challenge to the court's jurisdiction. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n. 3 (9th Cir. 2014) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). When defendant mounts a facial attack, the court must "accept all allegations of fact in the complaint as true and construe them in the light most favorable to the plaintiffs." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In contrast, when presented with a factual challenge to subject matter jurisdiction, the court may evaluate extrinsic evidence and resolve factual disputes when necessary. S*ee Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine v. United States*, 704 F.2d

1074, 1077 (9th Cir. 1983)). In a factual challenge, the plaintiff "bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Harris v. Rand*, 682 F.3d 846, 850-51 (9th Cir. 2012)). Dismissal of a complaint without leave to amend should be granted only where the jurisdictional defect cannot be cured by amendment. S*ee Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### B. Rule 12(b)(6)

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming

1  dismissal with prejudice where district court had instructed pro se plaintiff regarding deficiencies

2  in prior order dismissing claim with leave to amend).

## II. APPLICATION

### A. The Court Takes Judicial Notice of Administrative Record

The Secretary asks the court to take judicial notice of two documents related to Ms. Lalwani's administrative charge. (*See* Motion to Dismiss FAC, ECF No. 26 at 4 n.1; Reply, ECF No. 30 at 4.) Specifically, the Secretary asks the court to take judicial notice of: (1) the transcript of the February 1, 2010 hearing before Administrative Law Judge Caitlin Schneider in *Lalwani v. Sebelius*, EEOC Case No. 550-2009-00254x (Feb. 1, 2010); and (2) an August 2, 2011 letter from the Department of Health and Human Services to Ms. Lalwani's representative David Hansher informing him of the Department's final decision with respect to Ms. Lalwani's EEO complaint. (7/16/2015 Metlitzky Reply Decl., Ex. A, ECF No. 20-1 at 2-8; 10/9/2015 Metlitzky Reply Decl., Ex. A, ECF No. 30-1 at 4-7.)

Taking judicial notice of these documents is proper. As one court in this district explained when taking judicial notice of similar documents:

> . . . [T]he Ninth Circuit has determined that courts may consider documents alleged in a complaint and essential a plaintiff's claims. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998). A court may also "take judicial notice of documents on which allegations in the complaint *necessarily* rely, even if not expressly referenced in the complaint, provided that the authenticity of those documents is not in dispute[,]" *Tercica, Inc. v. Insmed Inc.*, No. C 05-5027 SBA, 2006 WL 1626930, at *8 (N.D. Cal. June 9, 2006) (citing *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 837-38 (N.D. Cal. 2000)), and may take judicial record of matters of public record, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010), including "records and reports of administrative bodies." *Mack*[ ] *v. So. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) (citation omitted). In the context of employment discrimination cases in particular, it is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record. *See*, *e.g.*, *Hsu v. Donohoe*, No. 5:13-cv-02253-PSG, 2014 WL [1153912], at *2 (N.D. Cal. Mar. 20, 2014) (taking judicial notice of documents "stemming from [the plaintiff's] employment, litigation, and EEO history"); *Huang v. Wieking*, No. Civ. S-07-0589 WBS, 2007 WL 1574552, at *2 (N.D. Cal. May 30, 2007) (noting that the court could consider "the Grievance and EEO Policy, the EDR Plan, and the administrative record of plaintiff's termination" as "part of the public record"); *Dao v. Univ. of Cal.*, No. C-04-2257, 2004 WL 1824129, at *4 (N.D. Cal. Aug. 13, 2004) (taking judicial notice of records relating to the plaintiff's administrative grievance of her wrongful termination and employment discrimination claims).

*Lacayo v. Donahoe*, No. 14-cv-04077-JSC, 2015 WL 993448, at *9 (N.D. Cal. Mar. 4, 2015) (italics in original) (taking judicial notice of "extrinsic evidence that Defendant submitted" because it "pertains to Plaintiff's administrative proceedings with the EEO" and so "all are either referenced in the complaint or matters of public record and properly considered on either a 12(b)(1) or 12(b)(6) motion to dismiss").

Here, the two documents submitted by the Secretary relate to Ms. Lalwani's administrative proceedings, and Ms. Lalwani does not offer any reason to doubt their authenticity. (*See generally* Opposition, ECF No. 29.) In fact, Ms. Lalwani attached an incomplete copy of the August 2, 2011 letter from the Department of Health and Human Services to Mr. Hansher to her opposition brief. (*Id.*, Ex. C, ECF No. 29 at 12.) Accordingly, the court takes judicial notice of (1) the transcript of the February 1, 2010 hearing before Administrative Law Judge Caitlin Schneider in *Lalwani v. Sebelius*, EEOC Case No. 550-2009-00254x (Feb. 1, 2010); and (2) the August 2, 2011 letter from the Department of Health and Human Services to Mr. Hansher. (7/16/2015 Metlitzky Reply Decl., Ex. A, ECF No. 20-1 at 2-8; 10/9/2015 Metlitzky Reply Decl., Ex. A, ECF No. 30-1 at 4-7.)

In addition, the court also may consider the EEOC's January 15, 2015 "right-to-sue letter" informing Ms. Lalwani of its affirmation of the Department of Health and Human Services's August 2, 2011 final order concerning her EEO complaint because Ms. Lalwani attached the letter to her First Amended Complaint. (*See* FAC, Ex. A, ECF No. 24 at 14-18.)

### B. Ms. Lalwani Did Not Exhaust Her Administrative Remedies with Respect to Her Race and National Origin Discrimination Claim

Ms. Lalwani's second claim against the Secretary is for violation of Title VII for discriminating against her on the basis of her race and national origin. (FAC, ECF No. 26, ¶ 6(b).) The Secretary argues that Ms. Lalwani's claim fails because she did not allege that she exhausted her administrative remedies and thus the court lacks subject-matter jurisdiction over the claim. The court agrees with the Secretary.

Title VII is the exclusive judicial remedy for discrimination on the basis of race, religion, sex, or national origin in federal employment. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829-30, 835 (1976); *Boyd*, 752 F.2d at 413-14. To establish subject-matter jurisdiction over a Title VII claim, a

1   plaintiff must exhaust his or her administrative remedies. *B.K.B. v. Maui Police Dep't*, 276 F.3d

2   1091, 1099 (9th Cir. 2002) (citing *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)).

3   "Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge

4   with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to

5   investigate the charge." *B.K.B.*, 276 F.3d at 1099 (citing 42 U.S.C. § 2000e-5(b)). "The

6   administrative charge requirement serves the important purposes of giving the charged party

7   notice of the claim and narrowing the issues for prompt adjudication and decision." *Id.* (citation,

8   internal quotation marks, and alteration omitted).

9   The Secretary contends that Ms. Lalwani did not exhaust her administrative remedies with

10  respect to her race and national origin claim because, although Ms. Lalwani's initial EEO

11  complaint contained a claim for race and national origin discrimination, she affirmatively and

12  purposefully withdrew and abandoned that claim during the administrative process. (Motion to

13  Dismiss FAC, ECF No. 26 at 6-8.) Ms. Lalwani admits in her opposition that she withdrew this

14  claim, (Opposition, ECF No. 29 at 4), and the administrative record supports the Secretary's

15  contention that Mr. Lalwani did so affirmatively and purposefully. For instance, the transcript of

16  the February 1, 2010 hearing before the administrative law judge states in relevant part:

> JUDGE SCHNEIDER: . . .
>
>   The following persons are present: the Complainant, Kavita Lalwani; Complainant's representative, David Handsher . . . .
>
>   The purpose of this hearing is to give the Complainant an opportunity to be heard.
>
>   . . .
>
>   In my Prehearing Report, dated December 7th, 2009, . . . the issue as stated is whether . . . the Agency subjected Complainant to a hostile work environment based upon her race, Indian; national origin, India; disability, breast cancer; religion, Hindu; and gender, female . . . .
>
>   . . . Mr. Handsher has notified me this morning that Complainant is withdrawing the bases of race, national origin, and religion, and proceeding with the bases of disability and gender.
>
>   Is that correct?
>
> MR. HANDSHER: Yes it is.

ORDER (No. 3:15-cv-01641-LB)

9

(Metlitzky 7/16/2015 Reply Decl., Ex. A, ECF No. 20-1 at 6-7.) Similarly, the August 2, 2011 letter from the Department of Health and Human Services to Mr. Hansher states that the administrative law judge determined that Ms. Lalwani "failed to demonstrate that the conduct she complaint about was sufficiently severe or pervasive to constitute a hostile work environment or that the conduct was directed at her because of her disability or sex," and explains in a footnote that the administrative law judge "noted [that Ms. Lalwani] withdrew the bases of race, national origin and religion at the hearing."

The Ninth Circuit has "instruct[ed] that abandonment or failure to cooperate in the administrative process prevents exhaustion and precludes judicial review." *Sommatino v. United States*, 255 F.3d 704, 709 (9th Cir. 2001) (citing *Greenlaw v. Garrett*, 59 F.3d 994, 1000 (9th Cir. 1995); *Tanious v. I.R.S.*, 915 F.2d 410, 411 (9th Cir. 1990)); *see also Carlson v. Veneman*, No. C 01-1410 MMC, 2002 WL 413807, at *1 (N.D. Cal. Mar. 12, 2002); *Santos-Reyes v. Gonzales*, No. C05-4550 VRW, 2007 WL 988182, at *3 (N.D. Cal. Apr. 2, 2007), a*ff'd sub nom. Santos-Reyes v. Mukasey*, 308 F. App'x 100 (9th Cir. 2009). Ms. Lalwani abandoned her race and national origin discrimination claim during the administrative process, and she provides no authority holding that she may nevertheless exhausted her administrative remedies with respect to that claim. Instead, she argues that she exhausted her administrative remedies because she included a race and national origin discrimination claim in her original EEO complaint and because the EEOC investigated it (before the withdrew it). But as the Secretary notes, it is not the scope of her EEO complaint that is at issue; at issue is the effect of her withdrawal of her claim during the administrative process. That she apparently abandoned it based on the advice of her counsel is of no moment, and she provides no authority suggesting otherwise. The court therefore concludes that Ms. Lalwani failed to exhaust her administrative remedies with respect to her race and national origin discrimination claim because she withdrew and abandoned it during the administrative proceedings. *See Sommatino*, 255 F.3d at 709. For this reason, the court lacks subject-matter jurisdiction over her race and national original discrimination claim under Title VII. *See B.K.B.*, 276 F.3d at 1099.

# CONCLUSION

For the foregoing reasons, the court grants the Secretary's motion to dismiss. The court dismisses with prejudice Ms. Lalwani's claim for race and national origin discrimination under Title VII (Claim Two).

**IT IS SO ORDERED.**

Dated: October 19, 2015

_____
LAUREL BEELER
United States Magistrate Judge

ORDER (No. 3:15-cv-01641-LB)

11